1
2
3
4
5
6
7                     **UNITED STATES DISTRICT COURT**
8                     **EASTERN DISTRICT OF CALIFORNIA**
9
10

11  MARAL ARTINE SAGHERIAN,                ) Case No.: 1:20-cv-00340-BAM
                                           )
12                      Plaintiff,         ) **ORDER REGARDING SOCIAL SECURITY**
                                           ) **COMPLAINT**
13          v.                             )
                                           )
14  KILOLO KIJAKAZI, Acting Commissioner of)
    Social Security,[1]                    )
15                                         )
                                           )
16                      Defendant.         )
    _____)
17

18                          __INTRODUCTION__

19          Plaintiff Maral Artine Sagherian ("Plaintiff") seeks judicial review of a final decision of the

20  Commissioner of Social Security ("Commissioner") denying her application for disability insurance

21  benefits under Title II of the Social Security Act and supplemental security income under Title XVI of

22  the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were

23  submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

24

25

26  ─────────────────────────
    [1]      Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of
27  the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.
    [2]      The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including
28  entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Docs. 6, 9, 18.)

                                            1

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards.  Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed applications for disability insurance benefits and supplemental security income on September 6, 2016.  AR 284-87, 288-97.[3]  Plaintiff alleged that she became disabled on October 16, 2015, due to chronic psoriatic arthritis, depression, and anxiety.  AR 288, 344.  Plaintiff's applications were denied initially and on reconsideration.  AR 166-70, 177-82.  Subsequently, Plaintiff requested a hearing before an ALJ.  ALJ Sharon Madsen held a hearing on October 4, 2018.  AR 41-68.  ALJ Madsen issued an order denying benefits on December 20, 2018.  AR 18-34.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  AR 6-10.  This appeal followed.

### Hearing Testimony

The ALJ held a hearing on October 4, 2018, in Fresno, California.  Plaintiff appeared at the hearing with her attorney, Melissa Proudian.   AR 43.  Paul Stanford, an impartial vocational expert, also appeared and testified.  AR 43, 432.

In response to questions from the ALJ, Plaintiff testified that she lives with her mom and receives general relief and food stamps.  She has a driver's license, but she does not drive.  She completed high school and later obtained a medical assistant diploma.  AR 45-46.

When asked about her daily activities and abilities, Plaintiff testified that she does not currently need help showering or dressing.  In the past, she could not do anything for herself, and her mom and brother had to help her out of bed.  AR 46, 53.  She does not cook or do household chores, but she will make her bed.  Her mom helps with shopping.  She visits with family occasionally.  AR 46.

---

[3]        References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

On a typical day, she mostly rests.  She tries to walk around the house to move her joints, but then will need to lie back down and will watch a little TV.  She will sometimes be on her phone.  She takes naps.  Her medications make her drowsy.  AR 47.

When asked about her past work, Plaintiff testified that she worked full time for Supplemental Health Care at a prison.  It was medical records/assistant job, mainly with paperwork and phone calls.  She last worked as a manager at Long John Silver's, where she cleaned, answered phone calls, handled customers and schedules, cooked, cashiered and conducted inventory.  AR 47-49.

When asked about her medical issues, Plaintiff confirmed that she has psoriatic arthritis.  She mainly feels pain in her feet, hips and back.  Her feet also swell constantly, and she has to sit with her feet elevated.  Elevating her feet or putting them in hot water helps with the pain.  She does not have skin issues, but she gets rashes and itching from the immune suppresser medication that she takes.  The medication helps a little bit with pain.  Her Celebrex does not help much with pain, but the Tramadol helps a bit.  She takes naproxen anti-inflammatory pills and uses a steroid cream.  She has gone through six or seven immune suppressers and they all gave her bad side effects.  They are going to keep trying different medications.  AR 49-52.  Plaintiff testified that she sometimes has flares, with pain and swelling, which usually happens when it is cold.  It is better in the summer, but she gets more rashes on her skin.  AR 52-53.

When asked about her abilities, Plaintiff testified that she could probably lift a bag of chips.  She can sit for 30 minutes before she will need to stand for 5 minutes.  She can walk half of a block, up to a five-minute walk.  It takes her a long time to put on shoes and socks.  She cannot climb stairs.  AR 53-55.

When asked about her depression and anxiety, Plaintiff testified that she cries a lot even if she takes her medication.  She takes Lexapro, which helps a tiny bit.  She gets really anxious around a big group or people.  She thought the arthritis might be giving her anxiety.  She gets along with people that she knows, but she gets anxious around crowds.  She sometimes has difficulty paying attention to the TV.  She can pay her own bills.  AR 55-56.

When asked about her hammertoes, Plaintiff testified that the pain in her feet feels like it is caused by her hammertoes and by the psoriasis.  She had surgery at one time and has been referred to a podiatrist.  The rheumatologist thinks she may need another surgery.  AR 57.

In response to questions from her counsel, Plaintiff testified that she probably rests all day.  She will get up for water, medication, and something to eat.  She takes a shower once a week because it hurts to shower every day.  It also is hard for her to change clothes every day.  AR 58-59.

Plaintiff explained that she is going to have more surgery on her foot because her four toes are bent, where the arthritis is hitting.  The immune suppresser is to prevent the arthritis from moving to other parts of her body.  She has to be on an immune suppresser despite the side effects.  She has been on the last immune suppressor for about two years and has had side effects the entire time.  She feels nauseous and drowsy.  She was sick the month prior and was throwing up violently.  AR 59-61.

When asked about her pain, Plaintiff testified that standing too long aggravates her pain, along with cold weather.  She is not sure if she could walk on uneven surfaces, like grass or gravel.  She cannot kneel, squat, or reach overhead.  She can reach out in front at shoulder level.  AR 62-63.  When she is depressed, she will isolate.  She will try to put on makeup whenever she feels okay.  Her goal is to try to put it on at least twice a month.  Last time, she stopped because she did not have energy and was in pain.  She has days that she cannot get out of bed with severe joint pain.  It happens about two weeks out of the month.  AR 63-65.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE.  The VE categorized Plaintiff's past work as medical records clerk and manager, fast food services.  AR 65-66.  The ALJ also asked the VE hypotheticals.  For the first hypothetical, the ALJ asked the VE to assume a person of the same age, education and work background who could lift and carry 10 pounds occasionally and frequently, could sit six to eight, stand or walk two, with occasional stooping, crouching, crawling, climbing, and kneeling, need to avoid extreme cold, and limited to simple, routine tasks.  The VE testified that there would be jobs for this person, such as document preparer, addresser, and assembler.  AR 66.

For the second hypothetical, the ALJ asked the VE to add occasional public contact.  The VE testified that this did not change the answer.  AR 67.

4

For the third hypothetical, the ALJ asked the VE to add to either of the hypotheticals that the person would need an additional two-to-four breaks of 30 minutes per day.  The VE testified that this would eliminate all work.  AR 67.

Following the ALJ's questions, Plaintiff's attorney asked the VE to consider hypothetical one, but the individual would miss two to three days per month.  The VE testified that this would eliminate all work.  AR 67.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 21-34.  Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 16, 2015, the alleged onset date.  AR 23.  The ALJ identified the following severe impairments:  psoriatic arthritis, obesity, hammertoes, depressive disorder, and anxiety disorder.  AR 23-24.  The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments.  AR 24-26.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform less than the full range of sedentary work.  She could lift and/or carry ten pounds occasionally and ten pounds frequently, could stand and/or walk for two hours out of an eight-hour workday, could sit for six to eight hours out of an eight-hour workday, could occasionally stoop, crouch, crawl, climb and kneel, must avoid exposure to extreme cold and was limited to simple, routine tasks.  AR 26-33.  With this RFC, the ALJ found that Plaintiff could not perform any past relevant work, but could perform other jobs in the national economy, such as document preparer, addresser, and assembler.  AR 33-34.   The ALJ therefore concluded that Plaintiff was not disabled.  AR 34.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this

1   Court must determine whether the decision of the Commissioner is supported by substantial evidence.

2   42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*,

3   402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

4   1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as

5   adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be

6   considered, weighing both the evidence that supports and the evidence that detracts from the

7   Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the

8   evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.,*

9   *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's

10  determination that the claimant is not disabled if the Commissioner applied the proper legal standards,

11  and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of*

12  *Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

14          In order to qualify for benefits, a claimant must establish that he or she is unable to engage in

15  substantial gainful activity due to a medically determinable physical or mental impairment which has

16  lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §

17  1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such

18  severity that he or she is not only unable to do his or her previous work, but cannot, considering his or

19  her age, education, and work experience, engage in any other kind of substantial gainful work which

20  exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The

21  burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.

22  1990).

## DISCUSSION[4]

24          Plaintiff contends that the ALJ committed harmful error by failing to provide clear and

25  convincing reasons to reject her symptom testimony.  Plaintiff further contends that the ALJ erred by

---

[4]          The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

rejecting the medical source statement of her rheumatological specialist and by rejecting the opinion of the examining psychiatric physicians.

### A.  Plaintiff's Subjective Complaints

Plaintiff initially contends that the ALJ committed harmful error by failing to provide clear and convincing reasons for rejecting her symptom evidence "of severe pain and limitation, preventing sustained work activity, due to psoriatic arthritis, hammertoes and depression/anxiety."  (Doc. 22 at 21.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).  First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.  *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms.  AR 27.  The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The ALJ first found that despite Plaintiff's alleged impairments, she had engaged in "somewhat normal level of daily activity and interaction."  AR 27.  An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"), *superseded by regulation on other grounds*.  The ALJ cited Plaintiff's ability to shower, clean her room, make the bed, visit with family, watch television, spend time on the phone, and handle money, along with the fact that she lived with her family and had no problem getting along with family, friends, neighbors, or others, and following instructions. AR 27, 46-47, 56. 27, 334-36, 383-84.  She also admitted to exercising at a moderate activity level.  AR 27, 791.

Although the ALJ concluded that the physical and mental capabilities for these tasks and social interactions replicated capabilities needed to obtain and maintain employment (AR 27), the Court finds that Plaintiff's minimal activities do not appear to meet the threshold for transferable work skills with respect to her physical activities. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (finding reading, watching television, and coloring in coloring books so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace). Plaintiff's limited ability to shower, make her bed, and watch television are not sufficiently demanding and do not bear a meaningful relationship to the activities of the workplace. The Court therefore finds the ALJ's conclusion that these tasks are transferable to the positions of document preparer, addresser, or assembler is not supported by substantial evidence. The Court acknowledges the ALJ's reference to a notation in Plaintiff's records identifying a moderate activity level in January 2016, (AR 27, 791), but finds this single reference insufficient. The ALJ proffers no other basis to demonstrate that Plaintiff's physical activities are necessarily demanding such that they translate to the activities of a workplace. Even if this reason for discounting Plaintiff's testimony is inadequate, however, there are sufficient other reasons provided to the support the assessment of Plaintiff's subjective complaints. *See Batson*, 359 F.3d at 1197.

For example, the ALJ found that Plaintiff's allegations of disabling symptoms and limitations were not supported by the medical findings. AR 28. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). With respect to Plaintiff's allegations of disabling physical limitations from her psoriatic arthritis, the ALJ determined that Plaintiff's physical examinations and objective tests revealed many negative findings, and any positive findings were often mild and never more than moderate. AR 28. According to the record, on October 1 and 4, 2015, Plaintiff's musculoskeletal joint exam was unremarkable. She had no pedal edema, clubbing or cyanosis. AR 28, 457, 1181. On October 14, 2015, Plaintiff had no pedal edema, no clubbing or cyanosis. She had tender medial "scap" borders bilaterally, her knees, ankles, and feet were okay, and she had "[s]ome tenderness and mild swelling occ toes bilat feet" and "[m]ild noted left 1st and [right] 2nd and 4th." AR 478. On October 21, 2015, Plaintiff had only mild changes to her toes, no pedal

edema, clubbing or cyanosis.[5]   AR 505.  On November 13, 2015, Plaintiff had only mild paraspinal tenderness, multiple joint tenderness, no obvious swelling or deformity, and mild thoracic paraspinal tenderness.  AR 551.  On December 1, 2015, Plaintiff no pedal edema, no clubbing or cyanosis, she had "1+ swelling of the IP joint of the left 1st toe and minimal swelling and discomfort of the L 2nd IP joint-minimal loss of mobility of the neck," no peripheral swelling or synovitis of the hands, wrists, elbows, shoulders or knees, her peripheral pulses were normal, and she had no pedal edema, no clubbing or cyanosis.  AR 28, 604.  On December 4, 2015, Plaintiff had left hallux PIP J pain. Surgery was recommended to fuse the joint in her toe.  AR 611, 635.

On January 23, 2016, a foot x-ray showed right second toe with soft tissue swelling without underlying bony abnormality, left first IP joint osteoarthropathy and subluxation, and bilateral mild pes planus.  AR 28, 752.  A lumbar spine x-ray was normal.  AR 28, 753-54.  On January 25, 2016, Plaintiff underwent surgery, first ray arthrodesis, hallux interphalangeal joint (left) on her foot.  AR 768.  Plaintiff was repeatedly noted to be doing satisfactory post-operation.  AR 28, 870, 937, 1048, 1083-84, 1095, 1103, 1106, 2690.   An x-ray of her left foot on March 9, 2016, was unremarkable. AR 940.  On February 17, 2016, Plaintiff had a swollen 2nd toe (sausage) on her right with swelling extending over the distal metatarsal.  AR 859.

On March 5, 2016, Plaintiff sought emergency room treatment for right ankle/foot pain and swelling, localized to the right toe.  AR 889, 891.  However, on examination, she only had mild swelling with redness of her right foot and an x-ray showed nonspecific soft tissue swelling about the foot and no displaced fracture.  AR 29, 893, 899.  Plaintiff's foot improved with medication and an examination on March 9, 2016, showed only mild swelling.  AR 933. On March 15, 2016, she had mild swelling of her ankles and tenderness, along with "mtp right 2-5 swelling, tender" and no "toe sausaging."  AR 29, 948. On April 5, 2016, Plaintiff had multiple joint tenderness, but no obvious swelling or deformity.  AR 29, 1041.  A June 1, 2016 x-ray of her bilateral feet showed no significant arthritic changes with joint space narrowing or osteophyte formation.  AR 3163.  On July 19, 2016, Plaintiff's examination showed "right 2nd mcp tender" with no swelling, right ankle "mild

---

[5] Plaintiff's pain was noted to be out of proportion to what her treating physician could see.   AR 504.

warmth/swelling, tender," "[f]orefeet and toes with mcp and ip [swelling], tenderness," and "some sausage digits." AR 1087. On November 15, 2017, Plaintiff had mild dactylitis of the bilateral toes with tenderness on palpation and multiple tender points all over the body. AR 3140. On December 14, 2017, Plaintiff had multiple tender points all over the body, but a musculosketal exam was normal. AR 3131. On February 7, 2018, Plaintiff was negative for cyanosis and edema. A musculosketal exam was normal. She had hammertoes bilaterally, mild dactylitis in the toes bilaterally and multiple tender points all over the body. AR 3123-24. On February 12, 2018, Plaintiff had a normal range of motion, normal gait, and no edema. AR 3115. On May 1, 2018, Plaintiff had normal range of motion, no edema, no tenderness to joints, and a normal motor and sensory examination, but was sitting in a wheelchair. AR 3087-88. On May 12, 2018, Plaintiff was ambulating without difficulty, negative for cyanosis and edema, and had 5/5 motor strength in all extremities. She had hammertoes bilaterally, mild dactylitis in the toes bilaterally and multiple tender points all over the body. AR 3104-05. On May 29, 2018, Plaintiff had normal range of motion, no edema, no tenderness to joints, but was sitting in a wheelchair and ambulating with a walker in the clinic. AR 3085. On August 5, 2018, Plaintiff was ambulating without difficulty, and was negative for cyanosis and edema, with 5/5 motor strength in all extremities. She had hammertoes bilaterally and multiple tender points all over her body. AR 30, 3092-93.

Based on the above, the Court finds the ALJ's determination that Plaintiff's physical examinations and objective tests revealed many negative findings, and any positive findings were often mild and never more than moderate, is supported by substantial evidence.

With respect to Plaintiff's allegations of disabling mental impairments, the ALJ determined that Plaintiff had many negative and normal mental status findings throughout the record. AR 30. As noted by the ALJ, on October 14, 2015, Plaintiff loudly declaimed depression, and her mental status examination was normal. AR 30, 475, 478. She again denied depression on October 21, 2015. AR 504-05. Although diagnosed with major depression, single episode, depressive disorder due to another medical condition with major depressive like episode, and anxiety disorder due to another medical condition, the ALJ correctly noted that Plaintiff's mental status evaluations were generally within normal limits between November 19, 2015, and August 24, 2017. AR 30, 558-59, 2729, 3165. For

instance, on March 5, 2016, Plaintiff was negative for depression, and not nervous/anxious, with normal mood, affect, judgment and thought content.  AR 890, 893.  On September 15, 2016, Plaintiff's mental status examination was generally normal, with a sad mood, but normal thought content, attention, and concentration, and good impulse control, insight, and judgment.  AR 2729.  On September 19, 2016, Plaintiff's mental status examination was generally normal.  She had a depressed mood, but she smiled and engaged more and laughed throughout therapy.  AR 2742.  On September 27, 2016, Plaintiff had a depressed and anxious mood, but her thought content was normal, she was fully oriented, her attention and concentration were within normal limits and her impulse control, insight and judgment were good.  AR 2756.  On September 29, 2016, her mental status examination only noted a depressed mood.  AR 2931.  On October 4, 2016, Plaintiff had a depressed mood, but her affect was full range and appropriate.  AR 2774.  Mental status examinations on October 11 and 20, and November 1 and 8, 2016, were generally normal.  AR 2794-95, 2809, 2854, 2864.  Plaintiff's remaining status examinations on December 1, 2016, and January 4, February 14, March 15 April 19, May 17 and 26, June 23 and 26, July 21, and August 24, 2017, were generally normal.  AR 2891, 3166-67, 3183-84, 3194, 3203, 3218, 3226, 3234, 3242, 3250, 3260.

       The ALJ also considered that Plaintiff received routine, conservative and non-emergency treatment since the alleged onset date.  AR 28.  An ALJ is permitted to consider evidence of conservative treatment in evaluating a claimant's subjective complaints.  *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding evidence of conservative treatment sufficient to discount claimant's testimony regarding severity of impairment).  According to the record, Plaintiff's treatments consisted of physical therapy and acupuncture, pain medication, and injections and oral medications to treat her psoriatic arthritis.  AR 662-63 (physical therapy), 1087 (oral medications and injections), 1093 (acupuncture for ankle and feet pain, found helpful), 1099 (acupuncture), 1152 (oral medication), 1158 (physical therapy), 3085 (oral medications), 3103 (detailing attempted rheumatology medications).  Plaintiff underwent surgery in January 2016 for a joint in her left toe, but she was repeatedly noted to be doing satisfactory post-operation.  AR 28, 870, 937, 1048, 1083-84, 1095, 1103, 1106, 2690.  Further, Plaintiff's sole visit to the emergency room in March 2016 does not undermine the ALJ's conclusion, as the emergency room findings and x-rays showed only mild

11

swelling with redness of her right foot and nonspecific soft tissue swelling about the foot and no displaced fracture.  AR 893, 899.

The Court therefore concludes that the ALJ did not commit reversible error in evaluating Plaintiff's subjective complaints.

**B.  Evaluation of Treating Rheumatologist – Dr. Jeffrey Fong, M.D.**

Plaintiff contends that the ALJ erred by rejecting the opinion of Plaintiff's treating rheumatological specialist, Dr. Jeffrey Fong.

On March 15, 2016, Dr. Fong wrote a letter indicating that Plaintiff had some chronic active medical conditions, and he was treating her for psoriatic arthritis.  Dr. Fong opined that Plaintiff was "currently unable to work due to" her psoriatic arthritis and was "likely to be permanently affected." AR 446.

On March 24, 2017, Dr. Fong wrote another letter on behalf of Plaintiff.  Dr. Fong indicated that Plaintiff had "a chronic medical condition that [was] preventing her from working."  AR 3078. Dr. Fong did not think that Plaintiff would be able to work for a least another 1 year.  He reported treating Plaintiff for "severe Psoriatic arthritis which has been resistant to multiple medicines so far." *Id.*

On January 31, 2017, Dr. Fong completed a Physical Medical Source Statement form.  He identified Plaintiff's symptoms from psoriatic arthritis as severe pain and some swelling.  On her last visit, he noted findings of a tender left knee, tender bilateral ankles and hind foot, swelling and tender at MTP 235 and 23LMTP, with "sausage toes" both feet.  AR 3080.  He opined that Plaintiff could walk less then one block without rest or severe pain.  She could sit more than 2 hours at one time, but only stand 10 minutes at one time.  In an 8-hour working day, she could sit at least 6 hours.  AR 3080. When standing, a cane or other hand-held assistive device would be helpful, but it was not necessary. She could lift 10 pounds frequently, but she could not carry.  She could frequently twist and stoop(bend), but could never crouch/squat, climb stairs, or climb ladders.  AR 3081.  He suspected she was likely to be off task 15% and opined that she likely would be absent from work as a result of her impairments or treatment more than four days per month.  AR 3082.

12

Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id.* Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.* "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

In this instance, Dr. Fong's treating opinion was contradicted by the opinions of the state agency medical consultants, Drs. E. Wong and W. Jackson. Drs. Wong and Jackson both opined that Plaintiff could lift and/or carry 10 pounds occasionally, 10 pounds frequently, could stand and/or walk 2 hours, and could sit about 6 hours in an 8-hour workday. She was limited in pushing and/or pulling in her lower extremities, and she could occasionally climb ramps/stairs, occasionally climb ladders/ropes/scaffolds, and occasionally balance, stoop, kneel, crouch and crawl. AR 101-02, 118-19, 136-37, 152-53. In light of these opinions, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record to discount Dr. Fong's opinion.

In evaluating Dr. Fong's opinion, the ALJ reasoned as follows:

The undersigned has considered and gives little weight to J. Fong, M.D., who made a disability statement based upon psoriatic arthritis on March 15, 2016 and March 24, 2017, and filled out a residual functional capacity questionnaire on January 31, 2017 (Exhibits 1F 13F, and 14F). The undersigned has given little weight to this opinion because it is not supported by objective evidence and it is inconsistent with the record as a whole. As an opinion on an issue reserved to the Commissioner, this statement is not entitled to controlling weight and is not given special significance pursuant to 20 CFR 404.1527(d) and 416.927(d) and SSR 96-5. Dr. Fong primarily summarized in the treatment notes the claimant's subjective complaints, diagnoses, and treatment, but did not provide objective clinical or diagnostic findings to support the functional assessment. This opinion is inconsistent with the objective findings already discussed above in this decision, which

13

1       show many mild and moderate findings.  This opinion is also inconsistent with the
2       claimant's admitted activities of daily living that have already been described above in this
     decision.  Therefore, this is given little weight.
3  AR 31.

4       Having considered the record, the Court finds that the ALJ provided specific and legitimate

5  reasons supported by substantial evidence to assign little weight to Dr. Fong's opinions.  As one

6  reason, the ALJ properly discounted Dr. Fong's March 2016 and March 2017 letters, which stated that

7  Plaintiff was unable to work, because those statements were opinions on an issue reserved to the

8  Commissioner.  AR 31.  A physician's opinion on the ultimate issue of disability is not entitled to

9  controlling weight because statements "by a medical source that [a claimant is] 'disabled' or 'unable

10  to work'" "are not medical opinions" under the Social Security regulations. 20 C.F.R. §§ 404.1527(d),

11  416.927(d). An ALJ "is precluded from giving any special significance to the source; e.g., giving a

12  treating source's opinion controlling weight" when it is on an issue reserved to the Commissioner,

13  such as the ultimate issue of disability. SSR 96-5p, 1996 WL 374183 at *3 (July 2, 1996); *McLeod v.*

14  *Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("[t]he law reserves the disability determination to the

15  Commissioner"); *Martinez v. Astrue*, 261 Fed.App'x 33, 35 (9th Cir. 2007) ("the opinion that [a

16  claimant] is unable to work is not a medical opinion, but is an opinion about an issue reserved to the

17  Commissioner. It is therefore not accorded the weight of a medical opinion").

18       Second, the ALJ discounted Dr. Fong's opinion as unsupported by objective clinical or

19  diagnostic findings in his treatment records.  AR 31.  An ALJ may properly reject a treating

20  physician's opinion that is unsupported by clinical findings. *See Chaudhry v. Astrue*, 688 F.3d 661,

21  671 (9th Cir. 2012); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (ALJ

22  need not accept the opinion of any physician, including a treating physician, if that opinion, is brief,

23  conclusory, and inadequately supported by clinical findings"); *Connett v. Barnhart*, 340 F.3d 871, 875

24  (9th Cir. 2003) (upholding rejection of treating physician's opinion as his own treatment notes did not

25  support extensive conclusions regarding the claimant's limitations).  Here, Dr. Fong's opinion,

26  contained in a check-the-box form, was permissibly rejected as inadequately supported by clinical

27  findings, which revealed only tenderness and some swelling.  *See Ford v. Saul*, 950 F.3d 1141, 1155

28

14

(9th Cir. 2020) (finding ALJ properly discounted physician's opinion in check-the-box questionnaire that failed to provide support for stated limitations).  Further, according to the record, Dr. Fong only examined Plaintiff on three occasions between October 2015 and July 2016 with minimal findings. (Doc. 22 at 7-9.)  As discussed above, on October 14, 2015, Dr. Fong found "[t]ender medial scap boarders" bilaterally, minimally tender thoracic spine, shoulders tender bilaterally with ok motion and no swelling.  Her knees, ankles and midfeet/hindfeet were "ok," and she had "[s]ome tenderness and mild swelling occ toes bilat feet" and [m]ild noted left 1st and [right] 2nd and 4th."  AR 478.  On March 15, 2016, Dr. Fong found only "mild fulness" and minimal tenderness of her left wrist, mild swelling and tenderness in her ankles, and "mtp right 2-5" swelling and tenderness with no "toe sausaging." AR 948.  Dr. Fong indicated that he would help with the psoriatic arthritis problem "as best [he] could from a distance."  AR 951.  On July 19, 2016, Dr. Fong found Plaintiff's right 2nd mcp tender with no swelling, a right ankle with mild warmth/swelling and tenderness, forefeet and toes with "mcp and ip" swelling and tenderness, and some sausage digits.  AR 1087.

Third, the ALJ discounted Dr. Fong's opinion as inconsistent with the objective findings in the record as a whole that showed many mild and moderate findings.  AR 31.  An ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole.  *See Batson v. Comm'r,* 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted).  As detailed above, the ALJ properly determined that Plaintiff's physical examinations revealed positive findings that were often mild or moderate.  The Court therefore finds that the ALJ did not commit reversible error in discounting the opinions of Dr. Fong.

## C.  Evaluation of Psychological Physicians – Mental Impairment

Plaintiff asserts that the ALJ committed harmful error by rejecting the opinions of the treating psychological physician of record, Dr. Amirali Sayadipour.  Plaintiff also asserts that the ALJ committed harmful error in evaluating the opinions of the examining physicians, Dr. Elke Kurpiers and Dr. Roger Izzi. (Doc. 22 at 34-38.)

*Dr. Sayadipour*

On March 15, 2017, Dr. Sayadipour wrote a letter at Plaintiff's request, which identified a treatment history and indicated that Plaintiff had been diagnosed with "Depressive Disorder to another

1   medical condition with major depressive like episode" and anxiety disorder due to another medical

2   condition.  AR 3076.  Dr. Sayadipour reported that Plaintiff had been compliant with psychiatric

3   treatment and her symptoms "caused clinically significant distress and impairment in her social and

4   occupation functioning."  *Id.*

5       *Dr. Kurpiers*

6       On November 4, 2016, Dr. Kurpiers completed a consultative psychological evaluation.  On

7   mental status examination, Plaintiff had a flat affect, and her mood was dysphoric and despondent.

8   She was coherent, alert and grossly oriented and her intellectual abilities were estimated to be within

9   normal range.  During cognitive screening, she seemed to give up easily at times.  She was mildly

10  inattentive and needed redirection.  She also was unable to solve two-digit addition, subtraction,

11  multiplication, and division problems.  Plaintiff presented with subdued and hopeless demeanor and

12  impressed as socially withdrawn.  Dr. Kurpiers opined that Plaintiff's ability to remember, carry out

13  simple tasks, and concentrate was decreased due to emotional factors and decreased concentration.

14  Her ability to persist for a normal workday, socialize and adapt to a normal work environment

15  appeared severely impaired.  Dr. Kurpiers identified the following metal problems as limitations:

16  depression, anxiety, fear around strangers, decreased self-esteem and body image changes.    AR

17  2712-16.

18      *Dr. Izzi*

19      On May 19, 2018, Dr. Izzi completed a consultative psychological evaluation.  On mental

20  status examination, Plaintiff was alert, with a dysphoric affect.  She had no obvious speech or

21  language problems and there were no gross indications of psychosis or schizophrenia.  AR 3069-70.

22  Psychological testing revealed a present level if intellectual functioning within the borderline range

23  and deficits in memory functions.  AR 3070-71.

24      Dr. Izzi also completed a Medical Source Statement of Ability to Do Work-Related Activities

25  (Mental) form.  He identified only mild impairment in the ability to understand and remember simple

26  instructions, to carry out simple instructions, to make judgments on simple work-related decisions, to

27  understand and remember complex instructions, to carry out complex instructions, and to make

28  judgments on complex work-related decisions.  AR 3072.  Dr. Izzi indicated that Plaintiff had

moderate impairment in the ability to interact appropriately with the public, supervisors, and co-workers and to respond appropriately to usual work situations and to changes in a routine work setting. AR 3073-74.

Plaintiff challenges the ALJ's decision to assign little weight to the opinions of Drs. Sayadipour, Kurpiers and Izzi. As referenced above, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating or examining physician. *Lester*, 81 F.3d at 830. If contradicted, the opinion of a treating or examining physician can only be rejected for "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31. The opinion of a nonexamining physician alone is not substantial evidence that justifies the rejection of the opinion of either a treating or examining physician. *Id.* at 831.

Here, the limitations imposed by Drs. Sayadipour, Kurpiers and Izzi arguably were contradicted by the opinions of the state agency physicians. On November 19, 2016, Dr. Catherine Blusiewicz, a state agency consultant, opined that Plaintiff could understand and carry out both simple and low-level detailed tasks for a 2-hour period during a normal workday. She also could complete a normal workday and week without interference from psychological symptoms. AR 104, 121-22. On January 3, 2017, Dr. E. Murillo, also a state agency consultant, opined that Plaintiff could understand and carry out both simple and low-level detailed tasks for 2-hour period during a normal workday. She could complete a normal workday and week without excessive interference from psychological symptoms. She could accept supervision and interact with coworkers and the public. Her contact with the public should be limited in nature. She could adapt to change and avoid hazards. AR 139, 155. In light of these opinions, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record to discount the opinions of Drs. Sayadipour, Kurpiers and Izzi.

With respect to Dr. Sayadipour, the ALJ assigned little weight to Dr. Sayadipour's opinion that Plaintiff had significant impairment in her social and occupational functioning. The ALJ reasoned that the opinion was not supported by objective evidence and was inconsistent with the record as whole, including objective findings that showed many normal and mild mental status evaluations. AR 31-32. An ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole. *See Batson*, 359 F.3d at 1195. As discussed above in connection with Plaintiff's subjective complaints,

17

the ALJ's determination that Plaintiff's mental status examinations were generally normal is supported by substantial evidence in the record.[6]  The ALJ therefore properly discounted Dr. Sayadipour's opinion.

Similarly, with respect to Dr. Kurpiers, the ALJ properly assigned little weight to her opinion that Plaintiff had a severe limitation in the ability to persist for a normal workday, socialize and adapt to a normal work environment, because that opinion was inconsistent with the record as whole.  AR 32.  Insofar as the ALJ also discounted Dr. Kurpiers' opinion because she appeared "to have accepted the claimant's subjective complaints despite the lack of mental health treatment records available," (AR 32), this is not a clear and convincing reason supported by substantial evidence necessary to reject Dr. Kurpiers' opinion.  *See Ryan v. Comm'r of Soc. Sec.*, 528 F.;3d 1194, 1199 (9th Cir. 2008) (finding ALJ could not reject psychiatric evaluation opinion as based too heavily on [claimant's] subjective complaints).  Nevertheless, the ALJ correctly noted that Dr. Kurpiers' opinion did not include a review of extensive mental health treatment records.  AR 2712.

With respect to Dr. Izzi's opinion, the ALJ assigned little weight to his identification of mild limitations in concentration and moderate social impairments.  The ALJ first found the moderate limitations inconsistent with Dr Izzi's own examination findings, which noted that Plaintiff spent time with friends and family, had no speech or language problems, and her intellectual functioning tested in the Borderline range.  AR 32, 3068-70.  An ALJ may reject a doctor's opinion that is inconsistent with the doctor's own findings.  *Johnson v. Shalala*, 60 F.3d 1428, 1432-33 (9th Cir. 1995).  Moreover, the ALJ found greater limitations in concentration, but only mild social limitations based upon the record as whole, including Plaintiff's statements and presentation at the hearing.  AR 32.  To the extent Dr. Izzi's opinion regarding moderate social impairments was inconsistent with the record, including Plaintiff's testimony that she lives and visits with family, (AR 46), this is a specific and legitimate reason supported by substantial evidence to discount Dr. Izzi's opinion.  *See Batson*, 359 F.3d at 1195. ///

---

[6] Further, the ALJ permissibly considered Plaintiff's Global Assessment of Functioning ("GAF") score of 51-60, which indicated moderate symptoms.  AR 32, 96, 113, 2716.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 598-99 (9th Cir. 1999) (affirming ALJ finding of non-disability where record contained GAF scores ranging from 45 to 61).

1

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Maral Artine Sagherian.

IT IS SO ORDERED.

Dated:   **September 29, 2021**        /s/ *Barbara A. McAuliffe*

UNITED STATES MAGISTRATE JUDGE